## EMPLOYERS' LIABILITY ASSUR. CORPORATION, Limited, v. ASTORIA MAHOGANY CO., Inc.

(District Court, E. D. New York.   December 5, 1923.)

Corporations ⬤⇒565(4)—Permission to file claim against corporation's receivers, after time for filing expired and after large sums advanced to receivers, denied.

Where, after the time for filing claims against a corporation in the hands of receivers had expired, several banks advanced large sums of money for its reorganization, the government's application for permission to file a claim for over $500,000 was denied as being inequitable to those who advanced the money in the belief that no such claim existed, regardless of the fact that the government had previously been unable to ascertain the amount due, since it could have served notice that it had a claim.

In Equity.   Suit by the Employers' Liability Assurance Corporation, Limited, against the Astoria Mahogany Company, Inc.   Application by the United States for permission to file proof of claim.   Application denied.

Ralph C. Greene, U. S. Atty., of Brooklyn, N. Y. (Guy O. Walser, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Shearman & Sterling, of New York City, for receivers.

GARVIN, District Judge.   This is an application by the United States of America for permission to file a proof of claim herein against the defendant company, now in the hands of receivers, based· upon an alleged right of the United States government to recover damages because of the breach of certain war contracts heretofore made between the government and a company which merged into the defendant during 1919.   Receivers were appointed by this court on January 14, 1922. They have since been conducting the business of the defendant company under the direction of the court, and have actively participated in efforts which have been made by various parties interested to reorganize the affairs of the defendant.   It has never been claimed that defendant was insolvent, but substantial assistance has been necessary in order to permit the receivers to conduct its business pending the completion of reorganization plans.   By order of this court, creditors of the defendant company were required to file their claims within 60 days from March 15, 1922, and notice of such requirement was mailed to all creditors, and was published in the Brooklyn Daily Eagle and Long Island Star, as directed by the court.

The time for filing such claims was extended by order of court to

and including April 15, 1922. As a result, many creditors have filed their claims with the receivers, which have been the subject of examination and liquidation. In order to effect the formulation of plans for and accomplishment of reorganization, banking creditors of the company have been co-operating with the receivers by lending them large sums of money, in order that the company's business might be continued. There have been constant meetings between the banking creditors, a preferred stockholders' committee, a creditors' committee, and the receivers to consider these matters.

In July, 1923, a hearing was held before this court, during which the receivers were directed to prepare and submit plans for reorganization within 30 days. The time was thereafter extended until October 26th, and the creditors' committee consented to a further 60-day extension. The receivers have been compelled to borrow large sums of money, particularly from the National City Bank of New York. On October 31 their obligations to said banks amounted to more than $1,-100,000, all incurred by the receivers subsequent to May 1, 1923, more than a year after the expiration of the time for filing all claims. If the banks had suspected that the governemnt was expecting to file any such claim as is herein involved, $562,098.86, they would not have made the advances. At least one branch of the government, the collector of internal revenue for the First district of New York, obtained permission from this court on May 10, 1923, to file a proof of claim in behalf of the government. Each proof was allowed to be filed by permission of this court. The government has not indicated in any way its intention to file such claim as is here sought to be presented.

It is believed that nothing more than this statement of fact will be required to make it clear that it is the duty of the court to deny this application. It would be most inequitable to permit parties to advance money, as the banking institutions have done here, to the extent of more than $1,000,000, in the belief that no such claims were in existence as are here sought to be established, and then permit the filing of such claim. It would have been simple for the government to have filed with the receivers prior to April 15, 1922, a claim stating that it was impossible to determine the amount and that particulars would be supplied as soon as possible. This would put the parties on notice. It is stated by the government that the claim arose upon the cancellation of contracts upon the declaration of the Armistice and at the termination of the World War. The Armistice was declared November 11, 1918; the war officially terminated some months later. If the government is to be permitted to file claims without giving notice of their existence three or four years after they first arose, there would seem to be no limit of time within which the government should not be permitted to file its claims, merely upon a showing that it has not been able to get the exact amounts computed.

Considerations of equity compel the court to deny this application.